A. Jeanne Grove (Bar No. 232312)
jgrove@nixonpeabody.com
Stratton Constantinides (Bar No. 305103)
sconstantinides@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: (213) 629-6000

**COLLINS & KHAN LLP**
MARC A. COLLINS (SBN 136769)
EMAIL: MCOLLINS@COLLINSKHAN.COM
AZIM KHANMOHAMED (SBN 277717)
EMAIL: AKHAN@COLLINSKHAN.COM
3435 WILSHIRE BLVD., STE. 2600
LOS ANGELES, CA  90010-2246
TELEPHONE:   323.549.0700

Attorneys for Defendants and Cross-Complainants
*Hussein M. Berri and Excaliber Fuels, a California corporation*

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12909 CORDARY, LLC<br><br>                    Plaintiff,<br><br>      v.<br><br>HUSSEIN M. BERRI, et al.,<br><br>                    Defendants. | Case No.:  8:22-cv-01748-JWH-JDE<br><br>Hon. John W. Holcomb<br><br>**DEFENDANTS HUSSEIN M. BERRI AND EXCALIBER FUELS' TRIAL BRIEF**<br><br>Current Trial Date: April 29, 2024 |

4879-8169-5915.4

# TABLE OF CONTENTS

Page

I.    FACTUAL BACKGROUND ..........................................................................- 4 -

    A.    History Of Investigation And Remediation. ......................................- 5 -

    B.    History Of Plaintiff's Ownership And Knowledge............................- 8 -

    C.    Prior Lawsuit—Westminster Action................................................- 9 -

    D.    Significant Releases From Non-Party Properties.............................- 10 -

II.   PLAINTIFF'S FEDERAL LAW CLAIMS ..............................................- 11 -

    A.    CERCLA. ..........................................................................................- 11 -

    B.    RCRA..................................................................................................- 12 -

        i.    No imminent and substantial endangerment. ........................- 12 -

        ii.   No evidence to distinguish alleged contamination from other gasoline stations and from the Excaliber Property. ...............................- 13 -

        iii.  RCRA claim is barred under the applicable statute of limitations........- 14 -

III.  PLAINTIFF'S STATE LAW CLAIMS........................................................- 15 -

    A.    Plaintiff Cannot Prove That Excaliber Defendants Were Negligent Or That It Suffered Harm In Support Of Its State Law Claims. ........................- 15 -

    B.    Even If Plaintiff Proves Causation And Prevails On Its State Law Claims, It Can Only Recover Damages Incurred After September 22, 2019. .........................- 16 -

IV.   PLAINTIFF'S CLAIMED DAMAGES .....................................................- 16 -

    A.    Plaintiff Provided Insubstantial Evidence Of Damages And Thus Failed To Comply With FRCP Rule 26........................................................................- 17 -

DEFENDANTS HUSSEIN M. BERRI AND EXCALIBER FUELS' TRIAL BRIEF
4879-8169-5915.4

B.   Plaintiff's Attempted Reliance On Expert Testimony Is Insufficient And Improper To Prove Damages. ..............................................................................- 18 -

V.   CONCLUSION ..........................................................................................- 21 -

DEFENDANTS HUSSEIN M. BERRI AND EXCALIBER FUELS' TRIAL BRIEF

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Aceto Agricultural Chems. Corp.*,
    872 F.2d 1373 (8th Cir.1989)................................................. 13

*Bodne v. George A. Rheman Co.*,
    811 F. Supp. 218 (D.S.C. 1993)............................................. 14

*City of Colton v. Am. Promotional Events, Inc.*,
    No. ED CV 09-1864 PSG, 2011 WL 486577 (C.D. Cal. Feb. 4, 2011) ............................ 14

*Foster v. United States*,
    922 F. Supp. 642 (D.D.C. 1996) ........................................... 13

*Price v. United States Navy*,
    39 F.3d 1011 (9th Cir.1994)................................................. 13

*Villagomes v. Lab'y Corp. of Am.*,
    783 F. Supp. 2d 1121 (D. Nev. 2011) ................................. 17

**State Cases**

*Resolution Trust Corp. v. Rossmoor Corp.*,
    34 Cal.App.4th 93 (1995)................................................... 15

**Federal Statutes**

28 U.S.C. § 2462 ........................................................................ 14, 15

42 U.S.C. §6972 .............................................................................. 9

42 U.S.C. § 6972(a)(1)(B)............................................................. 12

42 U.S.C. §§ 9607(a)(4)................................................................ 12

CERCLA ................................................................................... 11, 12

CERCLA, 42 U.S.C. § 9601(14) ................................................. 11

CERCLA, 42 U.S.C. §9607(a)........................................................ 9

Comprehensive Environmental Response, Compensation, and Liability Act ............................ 11

**State Statutes**

Cal. *Code of Civil Procedure* § 338(b) ...................................... 16

**Other Authorities**

Dkt. 1, *Plaintiff's Complaint* ................................................................................................ 18

Federal Rule of Civil Procedure No.26 ................................................................................ 20

Federal Rule of Evidence 26(a)(1)(A)(iii) .......................................................................... 17

FRCP Rule 26 ......................................................................................................................... 17

https://documents.geotracker.waterboards.ca.gov/esi/uploads/geo_report/24156795
74/T0605902346.PDF .................................................................................................... 8

https://documents.geotracker.waterboards.ca.gov/regulators/deliverable_document
s/7967908561/2023'06'23%20Berri%20Property%20CAP%20Approval.pdf ...................... 8

https://geotracker.waterboards.ca.gov/profile_report.asp?global_id=T0605900435 .................. 11

https://geotracker.waterboards.ca.gov/profile_report.asp?global_id=T0605999149 .................. 11

https://geotracker.waterboards.ca.gov/profile_report?global_id=T0605902346 ........................... 6

Local Rule 16-10 ....................................................................................................................... 4

*Plaintiff's Initial Disclosures*, lines 10-15 ..................................................................... 17

Rule 26 .......................................................................................................................... 17, 20

Rule 34 .......................................................................................................................... 17

Rule 702 ....................................................................................................................... 19, 20

DEFENDANTS HUSSEIN M. BERRI AND EXCALIBER FUELS' TRIAL BRIEF

4879-8169-5915.4

Pursuant to the Court's Scheduling Order (Dkt. 37) and Local Rule 16-10, Defendants and Cross-Claimants Hussein M. Berri ("Berri") and Excaliber Fuels ("Excaliber") (collectively "Excaliber Defendants") hereby submit the following Trial Brief in support of their position at trial and in response to Plaintiff 12909 Cordary, LLC's ("Plaintiff") Memorandum of Contentions of Fact and Law.

## I.   FACTUAL BACKGROUND

This action arises out of Plaintiff's attempts to require Excaliber Defendants to cleanup contamination beneath Plaintiff's property, located at 14041 Newland Street, Westminster, California 92683 (the "Newland Property"). Berri has owned the adjoining property, located at 8482 Westminster Boulevard, Westminster, California 92683 (the "Excaliber Property"), and operated a gasoline station business and serving the Los Angeles County community thereon as Excaliber Fuels since on or about 1982. Since the 1960s (and prior to Excaliber Defendants' ownership and operation), the Excaliber Property was historically utilized as a gasoline station, which included the historic use of underground storage tanks ("USTs"). In light of these historic operations, Excaliber Defendants have been diligently updating/replacing required UST equipment (in accordance with updated regulations) and performing environmental investigation and remediation activities since that time.

Despite ample evidence that (1) that Plaintiff has suffered no actual harm and only nominal damages, if any, as a result of the alleged contamination on the Newland Property; (2) Excaliber Defendants have been, and continue to, perform the same environmental investigation, monitoring, and remediation since the early-2000s for which Plaintiff has requested injunctive relief for in this action; (3) that nearby former gasoline service stations located upgradient from the Newland Property with documented releases of constituents of concern ("COCs") have migrated onto the Newland Property; and (4) that Plaintiff's own expert has concluded that Excaliber Defendants' ongoing activities at the Newland Property

are sufficient to adequately investigate and potentially remediate any alleged conditions thereon, Plaintiff has frivolously filed this action claiming damages related to the alleged migration of COCs from the Excaliber Property.

Plaintiff contends that releases of petroleum and benzene from the operation of former USTs conducted by current and former tenants of the Excaliber Property (a gasoline station) contaminated the soil and groundwater beneath the Newland Property, and that Plaintiff has thus suffered damages as a result. Excaliber Defendants deny these contentions. Excaliber Defendants contends that there were releases of petroleum products at two other former gasoline service stations, both located north and upgradient from the Newland Property, that caused separate plumes of contamination that have comingled. Excaliber Defendants further contend that Plaintiff has suffered only nominal damages, if any, and that there exists no "imminent and substantial endangerment" of human health or the environment as a result of any contamination allegedly present on the Newland Property.

Plaintiff seeks damages for past costs of cleanup to the Newland Property and equitable relief in the form of an injunction requiring Excaliber Defendants to cleanup both the Newland Property and the Excaliber Property to prevent the alleged continuing migration of contaminants from the Excaliber Property to the Newland Property.

### A.      History Of Investigation And Remediation.

Excaliber Property was acquired by Berri as an operating gas station, in or about 1982. At some point, when regulations were tightened regarding the requirements for the construction and operation of USTs, the Excaliber Property was compelled to cease operating as a gasoline station and operated solely as an automobile repair facility for approximately two to three years while Defendants made plans and acquired funds to redevelop the Excaliber Property.

In 1999, as part of Berri's redevelopment of the Excaliber Property and in

order to reinstate gasoline service operations in accordance with legal requirements, several existing USTs were removed from the Excaliber Property, to be replaced by compliant USTs and vapor recovery systems required by the new legislation. During this removal, a leak, and associated soil and groundwater contamination, was identified. These impacts were immediately reported to the appropriate regulatory authorities, and environmental investigation and remediation commenced under the Orange County Health Care Agency's ("OCHCA") Orange County Local Oversight Program ("OCLOP").[1] Funding for the investigation and remedial actions were provided under the California State Water Resources Control Board's ("SWRCB") UST Cleanup Fund, which provides small businesses and individuals State-funded reimbursement for expenses associated with the cleanup of leaking USTs. Upon the initiation of investigation activities, it was determined by numerous consultants who worked to evaluate the Excaliber Property that the contaminants identified were potentially due, at least in part, to a contamination plume traveling from other former gasoline service stations historically located north and northeast (upgradient) of the Excaliber Property and the Newland Property. These former gasoline stations also had documented historical releases from USTs that were similarly reported and investigated under regulatory oversight, beginning as far back as 1984 and during or at the same time as the discovery of the contamination on the Excaliber Property (approximately 2000).

In 2001, while environmental investigations continued, 5 new USTs were installed at the Excaliber Property in accordance with all legal requirements, and gasoline service operations were resumed. Since then, gasoline station operations have been conducted by a number of tenants, including Mobil and Unocal Corporation.

From 2002 to 2006, as part of the ongoing investigation and with the

---

[1] https://geotracker.waterboards.ca.gov/profile_report?global_id=T0605902346

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE ON THE BASIS OF NEW COUNSEL

4879-8169-5915.4

approval and direction of OCHCA, Excaliber Defendants effectuated the performance of groundwater remediation activities and the piloting, installation, and operation of a Dual Phase Vapor Extraction ("DPVE") system, which drastically decreased concentrations of identified impacts to groundwater and soil vapor at both the Newland Property and the Excaliber Property. From 2008 to 2009, multiple full scale chemical injection events, utilizing 33 injection points on the Newland Property and 20 injection points on the Excaliber Property, were performed to further assist with the remediation of both sites. All of these activities were performed at the direction of OCHCA with ongoing monitoring events to ensure effective remediation. Additional remedial events in the form of free product removal from groundwater was performed in 2014 to 2015.

In 2013 and 2018, in order to assess and ensure the safety of residents at the Newland Property, ambient air sampling and indoor air quality sampling were performed at the Newland Property. These studies determined the following: (1) "the health risk for building occupancy related to gasoline exposure to the tenants is acceptable," and (2) "constituents detected at concentrations exceeding their respective regulatory screening level comparison values [VOCs] are related to point sources within the apartments and not necessarily a result of vapor intrusion" from the alleged migration of contaminants from the Excaliber Property.

After exhausting available funds in the performance of OCHCA-directed investigation and remediation, Excaliber Defendants ceased receiving funds from the UST Cleanup Fund. Subsequently, Excaliber Defendants made numerous attempts to work with government regulators to obtain additional funding for environmental activities at both the Excaliber Property and the Newland Property; however, no additional funding was available and Excaliber Defendants continued to undertake required activities out of their own pockets.

Most recently, Excaliber Defendants have effectuated, and the Santa Ana

Regional Water Quality Control Board ("SARWQCB") has approved[2], a Corrective

Action Plan to address contamination on or about both the Excaliber Property and

the Newland Property, and those activities have already been initiated by Excaliber

Defendants' retained environmental consultant, WSP USA Inc.[3] Despite continuous

and ongoing investigation and remedial actions, which have been endlessly paid for

out-of-pocket by Excaliber Defendants despite the potential multiple sources of

contamination, performed under the guidance, and at the direction, of OCHCA and

SARWQCB, Excaliber Defendants continue to this day to conduct investigation

and remedial activities at both the Excaliber Property and the Newland Property.

### B.    History Of Plaintiff's Ownership And Knowledge.

As noted above, environmental impacts related to the Excaliber Property

have been public knowledge since 1999. In 2001, then-owner of the Newland

Property, Richard A. Hall ("Mr. Hall") and Westminster Living, LP ("Westminster

Living") filed a civil complaint against Excaliber Defendants alleging identical

claims as set forth by Plaintiff herein. In 2005, based on the ongoing nature of

remedial activities, Excaliber Defendants and Mr. Hall/Westminster Living settled

that civil action.

On December 9, 2002 during the pendency of that prior lawsuit, and while

environmental testing was already occurring on the Newland Property, Siraj

Hassanally ("Mr. Hassanally"), Plaintiff's owner/manager, acquired the Newland

Property from Westminster Living, which was at the time owned and operated by

Mr. Hall and his partnership, Westminster Living.  Mr. Hall's other company,

Pacific Housing Management, Inc., served as the property manager of that same

property. As noted by Mr. Hall, the Newland Property was sold to Mr. Hassanally

at a discounted rate based solely on the fact that there was the potential for

---

[2]
https://documents.geotracker.waterboards.ca.gov/regulators/deliverable_documents/7967908561/2023'06'23%20Berr
i%20Property%20CAP%20Approval.pdf

[3] https://documents.geotracker.waterboards.ca.gov/esi/uploads/geo_report/2415679574/T0605902346.PDF

4879-8169-5915.4

contamination thereon from nearby sites. Mr. Hassanally subsequently transferred ownership of the Newland Property to 110 Spruce LLC (December 23, 2003), and then to Plaintiff (May 28, 2009) who has retained ownership to this day.

Accordingly, this ownership history establishes two primary facts:

(1) Plaintiff (or Plaintiff's predecessor) was aware of the potential existence of contamination on the Newland Property at the time of acquisition in 2002; and

(2) Plaintiff acquired the Newland Property at a discounted rate *because* of the potential existence of contamination thereon.

**C.     Prior Lawsuit—Westminster Action.**

The prior owner of the Newland Property filed the exact same action against Excaliber Defendants on February 18, 2000 (the "Westminster Action"). The owner of the Newland Property at that time was Westminster Living, LP, a California limited partnership ("Westminster Living"), who alleged in its Complaint at para. 10:

> …Defendant Berri and Does 1 through 30, and each of them, have occupied, used and maintained the service station premises in such a manner that gasoline and other petroleum hydrocarbons used in the operation of the gasoline service station have leaked from the underground storage tanks on the service station property and have migrated into and contaminated the soil on the apartment property and ground water thereunder.

By filing another, nearly identical complaint in this Court, Plaintiff has attempted to resurrect several of the previously adjudicated claims (i.e., the RCRA claim for Strict Liability pursuant to 42 U.S.C. §6972, and the Recovery of Costs pursuant to CERCLA, 42 U.S.C. §9607(a)), from the Westminster Action. The allegations by Plaintiff in its Complaint, the current owner of the Newland Property, and Westminster Living, the prior owner of the Newland Property in the Westminster Action, both claim the same damages and devalued property as a result of contamination of the groundwater at the Newland Property as a result of contamination on the Excaliber Property.

At paragraph 11 of the Westminster Action, Mr. Hall and Westminster
Living alleged that:

> As a direct and proximate result of the acts and/or omissions of defendants,
> and each of them, Plaintiff has suffered damages including, but not limited
> to, an interference with Plaintiff's use of the apartment property, the
> diminution in the apartment property's value and substantial other costs and
> expenses. Plaintiff is informed and believes and thereon alleges that it has
> suffered damages well in excess of five hundred thousand dollars in
> diminution of property value as a result of the presence of the contaminants
> in the soil of the apartment property and sub-adjacent groundwater.

On or about July 21, 2005, Hussein Berri and Excaliber Fuels (as
Defendants) and Westminster Living (as Plaintiff) in the Westminster Action,
entered into a Judgment Pursuant to Stipulation, a true and correct copy of which is
attached to the RJN as Exhibit 3) ("Westminster Judgment") in satisfaction of all
claims and damages alleged in the Westminster Action.

At trial, the testimony of former Newland Property owner and Cross-
Defendant Mr. Hall, who was a party to the Westminster Action and the principal
of Westminster Living, provided notice to Plaintiff's managing partner, Mr.
Hassanally, upon his acquisition of the Newland Property in 2002, regarding
existing environmental conditions on and around the Newland Property.

As set forth in Excaliber Defendants' Motion for Summary Judgment
(Dkt.71), which was denied by this Court, Excaliber Defendants maintain that the
prior Westminster Action bars Plaintiff's actions herein under the doctrine of *res
judicata* and collateral estoppel.

**D.    Significant Releases From Non-Party Properties.**

Plaintiff has provided no evidence that Excaliber Defendants' alleged
contribution to the contamination on the Newland Property, if any, can be
distinguished from contamination caused by other gasoline service station sites with
long respective histories of releases and contamination. Additionally, Excaliber
Defendants will rely on the nearly 25 years of ongoing cooperation with state and

local regulatory officials in its efforts to prevent harm to the public health and the
environment from not only contamination that originated from the Excaliber
Property, but those chemicals that have migrated from other former gasoline
stations located around the Newland Property with documents histories of releases
and contamination.

In his Supplemental Response to Request for Production of Documents dated
October 4, 2023 (Joint Exhibit Nos. 266, 267), Berri provided information and
direct links to environmental remediation cases of the adjoining gas stations and
automotive facilities upstream from the Excaliber Property, including those
properties owned and operated by USA Petroleum and Chevron. Leaks and
remediation case were opened on the USA Petroleum property in 1984[4], and on the
Chevron property in 2000[5]. Based upon remediation techniques utilized in
remediation of these properties, contamination from these properties is the possible
source of the contamination discovered on the Excaliber Property and/or on the
Newland Property.

## II.   PLAINTIFF'S FEDERAL LAW CLAIMS

### A.   CERCLA.

As discussed in Excaliber Defendants Memorandum of Contentions of Fact
and Law (Dkt. 132), to prevail in its claims under the Comprehensive
Environmental Response, Compensation, and Liability Act ("CERCLA"), Plaintiff
must prove that it has incurred response costs under CERCLA. Plaintiff contends
that petroleum hydrocarbons and volatile organic compound ("VOC")
contamination from the Excaliber Property migrated into the soil and groundwater
beneath the Newland Property. However, CERCLA excludes petroleum from the
definition of "hazardous substances." See CERCLA, 42 U.S.C. § 9601(14). Thus,
Plaintiff may only seek the recovery of response costs caused by the alleged release

---

[4] https://geotracker.waterboards.ca.gov/profile_report.asp?global_id=T0605900435
[5] https://geotracker.waterboards.ca.gov/profile_report.asp?global_id=T0605999149

4879-8169-5915.4

of VOCs (provided it can establish the other elements of its CERCLA claim).

Notwithstanding, Plaintiff has failed to provide evidence or documents that it has incurred costs that were "necessary" and "consistent with the national contingency plan", or the amounts of those costs incurred. 42 U.S.C. §§ 9607(a)(4). As referenced in the 2013 Ambient Air Sampling Report (Joint Exhibit No. 173) and the 2018 Limited Indoor Air Quality Survey (Joint Exhibit No. 4), there are no actual exceedances of vapor intrusion to indoor air that would serve as a basis for necessary response costs under CERCLA. Despite potential other contaminated media on the Newland Property, Excaliber Defendants have acted as the sole parties in the environmental investigation and remediation activities on both the Excaliber Property and the Newland Property, which has been conducted under government regulatory oversight and direction and in accordance with applicable environmental regulations.

Plaintiff has failed to offer evidence that it has incurred any recoverable response costs for the alleged VOC contamination. Notably, during the March 8, 2024 hearing on the parties pending motions *in limine*, Plaintiff's counsel admitted that Plaintiff's total monetary damages claim for all causes of action is limited to $3,000 for past response costs. For this, and the additional reasons outlined above, Plaintiff's claims under CERCLA must fail at trial.

**B.    RCRA.**

    i.    No imminent and substantial endangerment.

In sharp contrast to CERCLA, which holds all past and present "owners and operators" strictly liable for a release of a hazardous substance, under RCRA a party is only liable if they "contributed or is contributing to" conditions which may present an "imminent and substantial" endangerment to health or the environment, See 42 U.S.C. § 6972(a)(1)(B). Plaintiff has failed to present any evidence to show that Excaliber Defendants have contributed or are contributing to an imminent and substantial endangerment at the Newland Property.

"In order to establish 'imminence,' the plaintiff must prove that the risk of threatened harm is currently present on the Site, and that the 'potential for harm is great.' *United States v. Aceto Agricultural Chems. Corp.*, 872 F.2d 1373, 1383 (8th Cir.1989); see also *Price v. United States Navy*, 39 F.3d 1011, 1019 (9th Cir.1994) (imminence refers to the nature of the threat rather than identification of the time when the endangerment initially arose). Thus, any alleged endangerment 'must be substantial or serious, and there must be some necessity for the action.' *Price*, 39 F.3d at 1019." *Foster v. United States*, 922 F. Supp. 642, 661 (D.D.C. 1996).

Plaintiff has provided no evidence that there exists an imminent and substantial endangerment to public health or the environment on the basis of environmental contamination alleged caused or contributed to by Excaliber Defendants. As referenced in the 2013 Ambient Air Sampling Report (Joint Exhibit No. 173) and the 2018 Limited Indoor Air Quality Survey (Joint Exhibit No. 4), there are no actual exceedances of vapor intrusion to indoor air that would serve to show any imminent or substantial endangerment at the Newland Property, and Plaintiff has provided no evidence to the contrary. Moreover, in 25 years of regulatory oversight, no government regulatory agency, even those that have reviewed and directed cleanup activities at both the Excaliber Property and the Newland Property, have designated either property as an "imminent and substantial endangerment" to public health or the environment. Thus, Plaintiff has failed to meet the threshold showing of "imminence" set forth in *Price* and *Foster*, as no evidence to date has been produced showing that the "potential for harm is great" as a result of contamination allegedly caused by Excaliber Defendants.

ii.   No evidence to distinguish alleged contamination from other gasoline stations and from the Excaliber Property.

Furthermore, Plaintiff has provided no evidence that Excaliber Defendants' alleged contribution to the contamination on the Newland Property, if any, can be distinguished from contamination caused by other gasoline service station sites with

- 13 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE ON THE BASIS OF NEW COUNSEL

4879-8169-5915.4

long respective histories of releases and contamination. Additionally, Excaliber Defendants will rely on the nearly 25 years of ongoing cooperation with state and local regulatory officials in their efforts to prevent harm to the public health and the environment from not only contamination that originated from the Excaliber Property, if any, but those chemicals that have migrated from other former gasoline stations located around the Newland Property with documented histories of releases and contamination.

### iii. RCRA claim is barred under the applicable statute of limitations.

Additionally, Plaintiff's RCRA claim is barred under the applicable statute of limitations for this action. Although there is no explicit statute of limitations set forth in the RCRA statute, 28 U.S.C. § 2462 states as follows:

> **28 U.S.C. § 2462 (Time for Commencing Proceedings)**
> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

Accordingly, as there is no Act of Congress stating otherwise, there is a strict five-year statute of limitations on Plaintiff's RCRA claim. *See also Bodne v. George A. Rheman Co.*, 811 F. Supp. 218, 221 (D.S.C. 1993); *City of Colton v. Am. Promotional Events, Inc.*, No. ED CV 09-1864 PSG, 2011 WL 486577, at *5 (C.D. Cal. Feb. 4, 2011) (noting that because RCRA does not contain its own statute of limitations, the 5 year statute of limitations found at 28 U.S.C. § 2462 applies). Evidence will show, including the testimony of former Newland Property owner and Cross-Defendant Mr. Hall, that notice was provided to Plaintiff's managing partner, Mr. Hassanally, regarding the existing environmental conditions on and around the Newland Property upon Mr. Hassanally's acquisition of the Newland Property in 2002 (i.e., during the pendency of the Westminster Action).

- 14 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE ON THE BASIS OF NEW COUNSEL

4879-8169-5915.4

Based on the foregoing, Plaintiff's RCRA cause of action is barred by the applicable statute of limitations under 28 U.S.C. § 2462.

For the reasons outlined above, Plaintiff's claim under RCRA must fail at trial.

## III.   PLAINTIFF'S STATE LAW CLAIMS

### A.   Plaintiff Cannot Prove That Excaliber Defendants Were Negligent Or That It Suffered Harm In Support Of Its State Law Claims.

Plaintiff seeks damages for the costs to clean up the Newland Property based on the state law claims of indemnity, nuisance, trespass and negligence (Dkt. 1). To prevail in each of these claims, Plaintiff must prove that Excaliber Defendants were negligent. To prevail on its nuisance claims, Plaintiff also must prove Excaliber Defendants' negligence. *See Resolution Trust Corp. v. Rossmoor Corp.*, 34 Cal.App.4th 93, 99-102 (1995).

Plaintiff is unable to prove that Excaliber Defendants were a "substantial factor" in the alleged harm suffered by Plaintiff. As noted herein, documented releases of petroleum products at two other former gasoline service stations, both located north and upgradient from the Newland Property, have caused and/or contributed to separate plumes of contamination that have comingled and entered upon the Newland Property. Plaintiff's failure to adequately investigate and/or account for the presence of COCs migrating from these additional release sites represents a fatal flaw in Plaintiff's allegations and rationale therefor.

With respect to Plaintiff's nuisance claim, Plaintiff has provided no evidence sufficient to satisfy the required elements of a private nuisance cause of action, specifically as it relates to the requirement that Excaliber Defendants have caused a condition that was "harmful to health, was indecent or offensive to the senses, or was an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property." There is no evidence of injury to health, no evidence of offending the senses, and no evidence that any act or omission by Excaliber

- 15 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE ON THE BASIS OF NEW COUNSEL

4879-8169-5915.4

Defendants has interfered with Plaintiff's free use of the property. Contrastingly, as referenced in the 2013 Ambient Air Sampling Report (Joint Exhibit No. 173) and the 2018 Limited Indoor Air Quality Survey (Joint Exhibit No. 4), there are no actual exceedances of vapor intrusion to indoor air that would serve to show any harm or obstruction as a basis for Plaintiff's private nuisance claim. Plaintiff has provided no evidence to the contrary.

Additionally, for reasons set forth more fully below, Plaintiff also cannot show that it "suffered harm" in the form of damages sufficient to satisfy the required elements of Plaintiff's state law claims, including negligence, nuisance, and trespass. For this reason, Plaintiff's state law claims must fail at trial.

### B. Even If Plaintiff Proves Causation And Prevails On Its State Law Claims, It Can Only Recover Damages Incurred After September 22, 2019.

Plaintiff seeks damages for the costs to remediate the Newland Property, despite the fact that Excaliber Defendants are already engaged in regulator-approved investigation and remediation actions at the Newland Property. There is a three-year statute of limitations for injury to property. Cal. *Code of Civil Procedure* § 338(b). Plaintiff commenced this action on September 22, 2022 (Dkt. 1). Excaliber Defendants will present ample evidence to show that Plaintiff's negligence claims are barred by the three-year statute of limitations in their entirety because Plaintiff discovered facts giving rise to their negligence claims no later than 2002, when Plaintiff's manager, Mr. Hassanally, acquired the Newland Property. Accordingly, any recovery under Plaintiff's remaining state law claims for indemnity and private nuisance and trespass would be limited to any damages that it incurred after September 22, 2019—three years prior to commencing this action.

### IV. PLAINTIFF'S CLAIMED DAMAGES

Plaintiff's claimed damages, at most, nominal in nature, are unprovable at trial due to Plaintiff's failure to comply with applicable statutory requirements

- 16 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE ON THE BASIS OF NEW COUNSEL

4879-8169-5915.4

during discovery, including but not limited to alleged response costs and diminution in value of the Newland Property.

**A.**     **Plaintiff Provided Insubstantial Evidence Of Damages And Thus Failed To Comply With FRCP Rule 26.**

Federal Rule of Evidence 26(a)(1)(A)(iii) requires that Plaintiff "***must, without awaiting a discovery request, provide to the other parties***":

[…]

(iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Additionally, the Advisory Committee Notes related to Rule 26 specifically states as follows:

A party claiming damages or other monetary relief ***must***, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such materials had been made under Rule 34. (emphasis added)

As discussed in more detail below, Plaintiff has categorically failed to provide adequate evidence supporting its claim for damages.

Plaintiff's Initial Disclosures in fact merely state that "Plaintiff does not have a computation" of its damages, and that "[i]n large part, the calculation of these damages will be the subject of expert testimony." *Plaintiff's Initial Disclosures*, p. 6, lines 10-15. Under the Federal Rule of Civil Procedure 26, Plaintiff was required to provide supplemental information regarding its alleged damages and computations therefor, but failed to do so. *Falconer v. Penn Mar.*, Inc., 232 F.R.D. 37, 41 (D. Me. 2005) (order to preclude warranted where disclosures not properly supplemented); *Villagomes v. Lab'y Corp. of Am.*, 783 F. Supp. 2d 1121, 1129 (D. Nev. 2011) (motion *in limine* proper to exclude evidence of damages where no computation of categories of damages was provided by the plaintiff, even in the absence of a specific discovery request).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE ON THE BASIS OF NEW COUNSEL

4879-8169-5915.4

Additionally, Plaintiff has generally failed to provide any evidence or documentation at all relating to the alleged "loss of rent and current limited use" or the "diminution in the market value" of the Newland Property (Dkt. 1, *Plaintiff's Complaint*, Prayer for Relief, para. 7). Plaintiff provided no substantive responses to discovery, and produced a mere 45 pages of document production in response to Excaliber Defendants' written discovery, wherein the only damages-related documents were invoices for expert tasks related to this litigation. Nothing in this document production provides any evidentiary or documentary support for Plaintiff's claims regarding the alleged loss of rent or the diminution in value of its Newland Property.

Notably, Plaintiff's counsel admitted during the March 8, 2024 hearing on the parties' motions in limine that Plaintiff was no longer seeking any damages related to "loss of rent and current limited use" or the "diminution in the market value", and that Plaintiff's damages claim at trial would be limited to alleged past response costs totaling $3,000 and injunctive relief.

**B.     Plaintiff's Attempted Reliance On Expert Testimony Is Insufficient And Improper To Prove Damages.**

Plaintiff's attempted reliance on expert testimony to support its damages claim is similarly misguided. Plaintiff has argued that it has designated Anthony Brown as its expert witness, and his expected testimony will concern "releases, migration, contamination, imminent and substantial endangerment, necessary future remedial action, and associated costs." However, Mr. Brown is clearly not a property appraisal expert. As set forth in Plaintiff's Disclosure of Expert Witnesses, in pertinent part:

> Mr. Brown is an expert hydrologist with over 30 years of experience in *hydrogeology, water resources, water quality, fate and transport of contaminants, groundwater remediation, regulatory strategy, water resources evaluation, and water supply engineering*; a copy of Mr. Brown's curriculum vitae is attached to his expert report. Mr. Brown is expected to testify regarding the releases of hazardous substances and wastes at the

- 18 -

Excaliber Property located at 8482 Westminster Boulevard, Westminster, California 92683 (Excaliber Property), the migration to and contamination of the soil, groundwater, soil vapor and indoor air at the Newland Property located at Newland Street, Westminster, California 92683 (Newland Property), the imminent and substantial endangerment posed to human health by the contamination associated with releases at the Excaliber Property, remedial action needed to address the releases compliant with the National Contingency Plan (NCP), and the costs associated with the remedial action; a more complete description of Mr. Brown's expected testimony is set forth in his expert report which is being served concurrently herewith.

Plaintiff fails to provide any argument, evidence, or authority that Mr. Brown's expertise in "hydrogeology, water resources, water quality, fate and transport of contaminants, groundwater remediation, regulatory strategy, water resources evaluation, and water supply engineering" qualifies him to provide expert testimony regarding current appraisal value of the Newland Property and any diminution in that value stemming from the alleged acts or omissions of Excaliber Defendants. As such, Mr. Brown is unqualified and unable to opine as to Plaintiff's alleged damages.

Furthermore, the report prepared by Mr. Brown does not address damages in this case, including but not limited to the cost of environmental investigation and remediation or the alleged diminution in value of the Newland Property. The report similarly does not state Mr. Brown's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" related to Plaintiff's alleged damages, as required by Rule 702.

Mr. Brown's report merely concludes that Excaliber Defendants should implement the activities it has already implemented, and as already set forth in the governing Corrective Action Plan (Joint Exhibit No. 212)—which was effectuated by Excaliber Defendants, approved by the Santa Ana Regional Water Quality Control Board, and has already been implemented at both properties—without providing any basis for the alleged cost Plaintiff will incur therefor. Notably, Plaintiff will not incur _any_ costs associated with the ongoing environmental

activities because Excaliber Defendants are already performing these activities at the direction of regulatory authorities (and have been doing so for nearly 25 years).

Plaintiff also contends that it has identified "nineteen (19) non-retained expert witnesses and the subject matter of their expected testimony pertaining to the site history, conditions, contamination, investigation, testing, remediation, monitoring and regulatory oversight." Again, none of these non-retained experts should be permitted to testify at trial on issues not previously disclosed by Plaintiff, including damages, due to Plaintiff's failure to comply with the Federal Rule of Civil Procedure No.26 and failure to provide an adequate basis for any alleged expertise on the computation of damages in this case as required by Federal Rule of Evidence 702 and the case law authority cited above.

Accordingly, here, on the eve of trial, Plaintiff has *still* failed to provide adequate evidence of its damages, including but not limited to response costs and the alleged diminution in value of the Newland Property, sufficient to satisfy the requirements of Rule 26. Outside of a production of documents related to expert invoices, Excaliber Defendants continue to be in the dark as to Plaintiff's actual damages to be claimed at trial.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE ON THE BASIS OF NEW COUNSEL

4879-8169-5915.4

## V.     CONCLUSION

Excaliber Defendants respectfully request the Court consider the issues raised above in connection with the jury instructions proposed by the parties and in connection with its decisions and rulings during trial.

Dated:  March 11, 2024                              Respectfully submitted,

                                                    NIXON PEABODY LLP

                                                    By: */s/ Stratton P. Constantinides*
                                                         A. JEANNE GROVE
                                                         STRATTON P. CONSTANTINIDES

                                                         *Attorney for Defendants and Cross-Complainants*
                                                         Hussein M. Berri and Excaliber Fuels

Dated:  March 11, 2024                              Respectfully submitted,

                                                    COLLINS & KHAN LLP

                                                    By: */s/ Marc A. Collins*
                                                         MARC A. COLLINS

                                                         *Attorney for Defendants and Cross-Complainants*
                                                         Hussein M. Berri and Excaliber Fuels

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE ON THE BASIS OF NEW COUNSEL

4879-8169-5915.4